# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PATRICIA RIPLEY<br>1100 OWENS RD.<br>APT. 102<br>OXON HILL, MD 20745<br><br>ANDRE PHILLIPS<br>4142 BUNKER HILL RD.<br>APT. 109<br>COTTAGE CITY, MD 20722<br><br>ALONZO WATTS<br>1100 OWENS RD.<br>APT. 402<br>OXON HILL, MD 20745<br><br>KENNETH GALLOWAY<br>4142 BUNKER HILL RD.<br>APT. 104<br>COTTAGE CITY, MD 20722<br><br>*and*<br><br>GAIL CARSON<br>5641 SARGENT RD.<br>HYATTSVILLE, MD 20782<br>*Plaintiffs.*<br><br><br>*v.*<br><br><br>THE HOUSING AUTHORITY<br>OF PRINCE GEORGE'S COUNTY<br>(HAPGC)<br>9200 BASIL CT.<br>SUITE 500<br>LARGO, MD 20774<br><br><br>ERIC C. BROWN, IN HIS OFFICIAL<br>CAPACITY AS<br>EXECUTIVE DIRECTOR AND IN HIS<br>INDIVIDUAL CAPACITY, | Civil Action No. : 8:16-cv-2699<br><br>JURY DEMANDED |

HOUSING AUTHORITY OF PRINCE
GEORGE'S COUNTY
9200 BASIL CT.
SUITE 500
LARGO, MD 20774

*and*

ALVIN COLEY, IN HIS OFFICIAL
CAPACITY OF PROGRAM MANAGER
FOR PUBLIC HOUSING IN PRINCE
GEORGE'S COUNTY AND HIS
INDIVIDUAL CAPACITY,
HOUSING AUTHORITY OF PRINCE
GEORGE'S COUNTY
9200 BASIL CT.
SUITE 500
LARGO, MD 20774
*Defendants.*

---

## COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, AND DAMAGES

Plaintiffs, bring this action by and through their attorneys David A. Prater and Disability Rights Maryland and allege the following:

### Introduction

1.       This lawsuit is being filed to stop the Housing Authority of Prince George's County's (HAPGC) unlawful practice of discriminating against persons with disabilities in the provision of affordable housing in its public housing program.

2.       Public housing in Prince George's County is one of the few affordable, accessible housing options for Plaintiffs, who are all low-income persons with disabilities. The Defendants own, operate, and manage public housing in Prince George's County.  However, it is the practice of the Defendant to ignore the housing needs of its disabled residents, specifically, the named Plaintiffs.

3.      Defendants have assigned the Plaintiffs inaccessible housing units, despite the Plaintiffs requests to have wheel-chair accessible units and Defendants' obligations to develop such units. Defendants have ignored the Plaintiffs' requests for reasonable modifications to their housing units denying Plaintiffs ability to use basic elements of their households, including toilets, refrigerators, stove tops, and showers.  Defendants have also required as a condition of tenancy, that Plaintiffs and other persons with disabilities preauthorize their removal from public housing by third parties based on Defendants stereotypes and fears that Plaintiffs may become unable to manage their households and tenancy obligations.

4.      These routine practices of the Defendants reflect more than mere neglect or indifference to the rights and safety of the Plaintiffs.  These practices evidence a widespread practice of discrimination against the Plaintiffs because of their disability.  The Defendants' actions and chronic refusal to address the housing needs of persons with disabilities necessitates this action to seek the intervention of the Court to enforce the Plaintiffs' legal right to equal access to public housing.

## JURISDICTION

6       This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201-02.

## VENUE

7.      Venue in this District is proper under 28 U.S.C. § 1391(b)(2)

## PARTIES

### Plaintiffs

8.      Plaintiff Ms. Patricia Ripley is a single adult tenant of public housing at 1100 Owens Rd. Apt. 102, Oxon Hill, MD 20745 residing under a lease with the Housing Authority of Prince

George's County. Ms. Ripley has a below the knee amputation and uses a wheelchair for mobility. She is a qualified person with a disability under the law and is otherwise eligible for public housing. She has been discriminated against by the Defendants as set forth in this complaint.

9.      Plaintiff Mr. Andre Phillips is a single adult tenant of in Prince George's County at 4142 Bunker Hill Rd., Apt. 109, Cottage City, MD 20722 under a lease with the Housing Authority of Prince George's County.   Mr. Phillips is paralyzed below the waist and uses a wheelchair for mobility. He is a qualified person with disability under the law and is otherwise eligible for public housing. He has been discriminated against by the Defendants as set forth in this complaint.

10.      Plaintiff Alonzo Watts is a single adult tenant residing at 1100 Owens Rd., Apt.402, Oxon Hill, MD 20745 under a lease with the Housing Authority of Prince George's County. Mr. Watts is a single below the knee amputee who alternates between the use of a wheelchair and prosthetic legs. Mr. Watts is a qualified person with a disability under the law and otherwise eligible to reside in public housing. He has been discriminated against by the Defendants as set forth in this complaint.

11.      Plaintiff Mr. Kenneth Galloway is a single adult tenant of public housing in Prince George's County at 4142 Bunker Hill Rd., Apt. 104, Cottage City, MD 20722 under a lease with the Housing Authority of Prince George's County. Mr. Galloway is a double above the knee amputee. He uses a wheelchair for mobility. Mr. Galloway is a qualified person with a disability under the law and is otherwise eligible for public housing. He has been discriminated against by the Defendants as set forth in this complaint.

12.      Plaintiff Ms. Gail Carson is a single adult tenant of public housing in Prince George's County at 5641 Sargent Ave., Hyattsville, MD 20782 under a lease with the Housing Authority of Prince George's County.  Ms. Carson has a physical impairment that requires her use of a motorized scooter to assist with her mobility.  She is a qualified person with a disability under the law and is otherwise eligible for public housing. She has been discriminated against by the Defendants as set forth in this complaint.

### Defendants

13.      Defendant the Housing Authority of Prince George's County (HAPGC), is the public housing authority for Prince George's County created by Md. Ann. Code, Housing and Community Development, § 17-604 and owns, operates, and manages all public housing in Prince George's County pursuant to 42 U.S.C. § 1437 *et seq*, including the properties and units in which the Plaintiffs reside. Defendant's primary source of funding is the United States Government, specifically the Department of Housing and Urban Development.

14      Defendant Eric C. Brown is the Executive Director of the Housing Authority of Prince George's County.  He has the authority and ultimate responsibility to oversee the day-to-day operations of HAPGC and to ensure that the agency and its employees do not discriminate against low-income applicants and residents with disabilities in the management and operations of public housing.  He is sued in his individual and official capacities.

15.      Defendant Alvin Coley is the Program Manager for Public Housing at the Housing Authority of Prince George's County.  He is responsible for managing the day to day affairs of public housing operations at HAPGC and to ensure that public housing employees do not discriminate against low-income applicants and residents with disabilities in the management and operation of public housing. He is sued in his individual and official capacities.

5

## FACTUAL ALLEGATIONS

**Defendant HAPGC Owns, Operates, and Manages Federally Subsidized Public Housing**

**That Is Required To Be Accessible for Persons with Disabilities**

16.     Public housing is a federally funded program authorized by the United States Housing Act of 1937, as amended, 42 U.S.C. 1437 *et seq*.  Although public housing is a federally created program, it is administered by local and state agencies called public housing authorities (PHA) to appropriately address the housing needs of a specific jurisdiction.

17.     Defendant Housing Authority of Prince George's County (HAPGC) is a PHA designated under Maryland state law and receives the majority of its annual budget from federal funds through the United States Department of Housing and Urban Development (HUD) to operate public housing and other federal low-income housing programs in Prince George's County, MD.

18.     HAPGC owns and operates approximately 392 units of public housing.

19.     HUD requires that HAPGC and its employees manage and operate public housing in a non-discriminatory manner and make its housing programs accessible to people with disabilities. 24 C.F.R. 8.1 *et seq*. This non-discrimination requirement extends to administration of the HAPGC's public housing program as well as to the physical design and construction of HAPGC's public housing properties.  *See* 24 C.F.R. § 8.25 (describing the design and construction requirements for existing public housing programs).  The design and construction of HAPGC public housing must comply with accessibility standards known as the Uniform Federal Accessibility Standards (UFAS).   Additionally, HAPGC is required to have at least 5% of its public housing units comply with UFAS standards.

20.     HAPGC last analyzed its compliance with UFAS standards in 1994.  The 1994 Assessment by HAPGC several significant deficiencies in HAPGC's public housing portfolio.

21.     From 1994 to 2016, HAPGC made minimal effort to address the lack of physical accessibility in its public housing program, despite being aware of the need of the Plaintiffs for wheelchair accessible housing and HAPGC's legal obligation to address the lack of accessible units in its public housing portfolio.  Upon information and belief, HAPGC asserts that only one one one-bedroom unit in its 392 unit portfolio is an UFAS accessible unit.

22.     HAPGC and the County have long recognized the need to address the issues raised in the 1994 UFAS assessment in its Annual Reports to HUD. HAPGC and its Executive Director are aware of the obligation to provide accessible housing in its public housing portfolio. HAPGC has accepted significant federal funding since the implementation of federal regulations regarding the accessibility of public housing in 1986.

23.     Despite public acknowledgements contained in their Annual Reports to HUD about the lack of wheelchair accessible public housing, the Executive Director of HAPGC, Eric C. Brown, has certified annually to the federal government that HAPGC is in compliance with federal civil rights laws regarding equal access and opportunity for persons with disabilities.  These actions have been taken with the knowledge that HAPGC lacks wheelchair accessible public housing.

24.     Recently, HAPGC staff under the supervision of Eric Brown and Alvin Coley, installed a gazebo in the rear of a public housing property located at 1100 Owens Road.  This gazebo is in the common use area of the residence of Plaintiffs Ripley and Watts but is not wheelchair accessible.

25.     The Plaintiffs units are not 'accessible' as required by federal regulations and have a numerous of design and construction elements that do not comply with the Uniform Federal Accessibility Standards (UFAS).

26.     Defendants have denied Plaintiffs equal use and opportunity to HAPGC public housing through a sustained practice of refusing to make structural modifications to units when necessary to ensure equal access and opportunity to persons who require wheelchair accessible units.  They have done so with the full knowledge of the need of the Plaintiffs and federal law and regulations requiring UFAS accessible units in HAPGC public housing.

**Plaintiffs Are Persons with Disabilities and Have Requested Accessible Units**

Facts in Common among the Plaintiffs

27.     Plaintiffs are persons with disabilities and reside under leases in public housing units owned, operated, and managed by the Defendants.  They are otherwise qualified individuals for public housing.

28.     Plaintiffs have all requested accessibility features to their units to accommodate their use of wheelchairs.

29.     Plaintiffs have made verbal and written requests for reasonable accommodations to HAPGC staff, employees, and agents.

30.     Defendant Eric C. Brown has received requests for reasonable accommodations from all of the Plaintiffs.  The requests for reasonable accommodations have been ignored or were denied.

31.     Plaintiffs have been denied the opportunity to use and enjoy HAPGC public housing because of the lack of physical accessibility in HAPGC public housing.   Plaintiffs struggle daily to use basic amenities in their apartments, including bathrooms and kitchens.  The lack of physical accessibility significantly impacts the Plaintiffs quality of life in public housing and their right to enjoyment of their tenancy.

32.     All of the Plaintiffs have suffered other acts of discrimination based disability by the Defendants as set forth herein.

Tricia Ripley

33.     Plaintiff Patricia Ripley is a single above the knee amputee. Ms. Ripley uses a wheelchair for mobility and requires an accessible unit. When Ms. Ripley first applied to HAPGC public housing in 1988, she requested a wheel-chair accessible unit. She renewed this request as most recently as January 7, 2016 and later revised it to include her need for a live-in aide.  **Exhibit 2**, Affidavit of Patricia Ripley.

34.     Ms. Ripley does not currently reside in a wheelchair accessible unit.  The lack of accessible features includes, but is not limited to, that her bathroom lacks the required clear floor space and correctly placed grab bars at the toilet and shower under the UFAS.

35.     The lack of required clear floor space and appropriately placed grab bars severely impacts Ms. Ripley's ability to use and enjoy her dwelling unit.  She can only enter her bathroom by guiding her chair at an angle into the wall, because the toilet obstructs a clear pathway into the bathroom.  This has caused damage to the wall because Ms. Ripley must maneuver her chair in such a way so that her chair scraps the wall of her apartment. Additionally, because of the lack of adequate turning radius she must transfer to her toilet from outside of her bathroom by grasping onto inappropriately placed grab bars and her sink and pulling herself around the doorframe onto her toilet. Many of the light switches and other features of her apartment are outside of her ability to reach

36.     HAPGC has not responded to Ms. Ripley's request for a wheel-chair accessible unit.

37.     HAPGC's unwillingness to provide Ms. Ripley a wheel-chair accessible unit is a source of disappointment, disruption, and physical pain for Ms. Ripley.  The lack of accessibility in Ms.

Ripley's puts her body at physical risk and is a source of extreme disruption and embarrassment. Her ability to complete activities of daily living, such a toileting and showering is seriously compromised.  Performing routine aspects of life rise to extraordinary ordeals because of the lack of accessibility in her unit.  Ms. Ripley continues to struggle daily to perform basic activities of daily living. She remains at risk and in fear of falling and of injury.

38.     On January 5, 2016, by and through her attorney, Ms. Ripley requested to be transferred to a UFAS accessible unit.  On April 8, 2016, Ms. Ripley amended her request to be transferred to a two-bedroom wheel-chair accessible unit because of her need for a live-in aide.  **Exhibit 3,** Letter to Eric C. Brown.  HAPGC ignored both of her requests and did not reply to either request.

39.     Additionally, HAPGC recently installed a gazebo at the public housing property in which Ms. Ripley resides. Ms. Ripley is denied any opportunity to use this gazebo because it does not have any degree of wheelchair accessibility. Defendants Brown and Coley are aware of the lack of physical accessibility to this gazebo but have done nothing to address the lack of wheelchair accessibility.

<u>Andre Phillips</u>

40.     Plaintiff Andre Phillips is totally paralyzed below the waist.  He has resided in HAPGC public housing since 2011.  Since 2013, Mr. Phillips has used an electric wheelchair for mobility. When Mr. Phillips began using an electric wheelchair, he requested to transfer to a wheel-chair accessible unit only to be transferred to his current unit on or about August or September 2013 by Defendant Alvin Coley.  **Exhibit 4**, Affidavit of Andre Phillips.

41.     Mr. Phillips' current unit is not accessible. Similar to the bathroom in Ms. Ripley's unit, there is not the required clear floor space and correctly placed grabs bars in his apartment.   The

shelves and cabinets under his bathroom sink prohibit him from using his lavatory. Additionally, controls for appliances in his kitchen, including his stove and refrigerator are not within the required reach distance under UFAS. *Id.*

42.     The inaccessibility of Mr. Phillips' unit impairs Mr. Phillips ability to use his unit. Mr. Phillips' can only roll forward into his bathroom. He cannot rotate his chair and cannot transfer to the toilet in his unit because of the lack of clear floor space. Instead, like Ms. Ripley, he must pull himself around the doorframe onto the toilet. Additionally, he cannot use his shower because of the lack of adequate turning space that would allow him to transfer into the shower. Instead, he can only receive sponge baths from a day attendant to maintain his personal hygiene. He has cut himself on his own wheelchair attempting to transfer to his toilet. Further, Mr. Phillips cannot use appliances in his kitchen, like his stove or refrigerator. For example, the controls for the elements of his stove are on the back of the stove, requiring Mr. Phillips to reach over the elements to turn them off or on. Mr. Phillips has burned himself while attempting to cook on the stove-top. These inaccessible features of Mr. Phillips' apartment impact his personal hygiene and his personal safety. *Id.*

41.     In September 2015, Ms. Phillips requested to be transferred to a UFAS accessible unit within HAPGC's public housing portfolio; to receive a voucher, or to have his unit modified to UFAS standards. **Exhibit 5**.

42.     Mr. Phillips was offered a voucher by HAPGC, but he later amended his request to only be transferred to a wheel-chair accessible unit. Mr. Phillips turned down a voucher because of he would be responsible for locating a unit on the private market that accepted a voucher and paying for modifications to the unit if the unit he located needed them.

43.     Instead, he requested interim modifications to his unit to have a greater degree of access in his unit.  That request has been ignored.

44.     On April 6, 2016, Mr. Phillips was told by the onsite property manager that he would be transferred the following day.  Mr. Phillips advised that he would not transfer until he could review the unit for accessibility.  Between his request for a transfer to a UFAS accessible unit and HAPGC advising him that he would be transferred the following day, Mr. Phillips had been prescribed a hospital bed. When apprised of Mr. Phillips' need for a two bedroom accessible unit, HAPGC was unable to offer him a two bedroom accessible unit.  HUD regulations and guidance specifically permit the granting of an extra bedroom as a reasonable accommodation to a disability when there is significant medical equipment.  **Exhibit 6,** Letter from Dr. Toman.

45,     On or about April 13, 2016, Mr. Phillips was shown the apartment.  The unit offered to Mr. Phillips was another one bedroom unit that lacked clear floor space at the toilet and roll-in shower and grab bars could not be installed on the walls. Mr. Phillips did not wish to transfer to another inaccessible unit.

45.     Because HAPGC ignored Mr. Phillips request to transfer to a UFAS accessible unit in August 2013, Mr. Phillips has been unable to use and enjoy his unit and must put himself at bodily risk to use basic amenities such as using the restroom and using the stove-top.  This is a source of great frustration, anxiety, discomfort, and anger for Mr. Phillips.  Additionally, it is a source of physical pain.  Mr. Phillips must pull his half paralyzed body around a door frame.  Mr. Phillips has fallen on numerous occasions because of the difficulty accessing his bathroom.  Mr. Phillips has been told that he complains a lot by HAPGC staff.  Mr. Phillips legitimate requests for physical accessibility have been dismissed by HAPGC staff and ignored.  Mr. Phillips continues to perform dangerous maneuvers and activities in his wheel-chair in order to use the

basic elements of his unit, including the bathroom. He has been denied full enjoyment and benefit of his housing unit because of his disabilities

<u>Alonzo Watts</u>

46.     Plaintiff Alonzo Watts has resided in public housing since 2012. Mr. Watts is a double-leg amputee and has diabetes. HAPGC first offered Mr. Watts a studio apartment that was neither wheel-chair accessible and did not have enough space for his in home dialysis machine. Mr. Watts was in the process of obtaining prosthetics and requested a unit that could accommodate his use of wheel-chair.  HAPGC represented that it would offer him to a fully accessible unit. **Exhibit 7,** Affidavit of Alonzo Watts.

47.      In response to developing sores and tightness of his prosthetics brought about by long periods of standing, Mr. Watts' current usual practice is to use his wheelchair in his home. However, the unit lacks basic elements of accessibility, such as grab bars in the bathroom.  Mr. Watts must grab onto nearby items not intended to support his weight when he transfers to the toilet, including a towel rack, the wall, and his bathroom sink.  Mr. Watts cannot rotate his wheel-chair in the bathroom because of the lack of clear floor space in his bathroom. He can only transfer to the toilet by bracing himself against the wall and placing his full weight on his sink in order to lift himself from his chair onto the toilet.  Similarly, Mr. Watts cannot access his shower.  A concrete 'lip' at the threshold of his 'roll-in' shower prevents him from rolling into the shower. He is unable to rotate his chair to position himself parallel to his shower chair in order to transfer to his shower.  On or about January 5, 2016, Mr. Watts requested to be transferred to a UFAS unit and to have some modifications to his unit until such time as a UFAS unit becomes available.  **Exhibit 8,** Letter to HAPGC. Mr. Watts has received no response to that request.

48.     Because of the lack of physical accessibility in his bathroom, Mr. Watts places himself in physical danger daily because of the lack of grab bars in his restroom.  Mr. Watts is fearful of falling and not being able to receive help.  He places his body at risk daily by using items in his restroom not intended to support his weight.  Mr. Watts is disappointed that he is residing in a unit that is not wheel-chair accessible.  Mr.  Watts continues to use his wheel-chair on a daily basis and transfers himself from his chair to the toilet without the benefit of grab-bars in his unit. He has been denied full enjoyment and benefit of his housing unit because of his disabilities

Kenneth Galloway

49.     Plaintiff Kenneth Galloway is a double above the knee amputee.  He resides in a studio apartment in HAPGC public housing and uses a wheelchair for mobility.  His bathroom lacks clear floor space to allow him to transfer to his toilet and an appropriately accessible shower to allow him to access his shower.

50.     Mr. Galloway, through a friend, requested to be moved to an accessible unit in 2015 after his left leg was amputated. Instead, he was relocated to his current inaccessible unit by the HAPGC. **Exhibit 9,** Affidavit of Kenneth Galloway. Mr. Galloway asked for assistance in addressing the lack of accessibility of his unit from HAPGC. Mr. Galloway renewed his request in December 2015 for a UFAS accessible unit.  He has received no response on that request. **Exhibit 10,** Reasonable Accommodation Request from Mr. Galloway.

51.     Mr.  Galloway does not currently reside in an accessible unit.  His unit lacks clear floor space and appropriately placed grab bars in his bathroom to facilitate a safe transfer for to the toilet, Mr. Galloway must toilet in a bedside commode and then dispose of the contents into his toilet.  Additionally, because of the lack of accessibility in his shower from the absence of a

14

shower bench and appropriate grab bars, Mr. Galloway bathes at his kitchen sink, or with a sponge in his bed. He is unable to maintain his hygiene to his satisfaction.

52.     The lack of accessibility is a source of depression and grave concern for Mr. Galloway. He experiences helplessness because he cannot use the basic elements of his unit, such as the restroom.  When he uses a bedside commode to toilet and a sponge to bath, Mr. Galloway feels unable to care for himself and depressed.  Additionally, Mr. Galloway must use the community room to perform personal maintenance such as shaving and brushing his teeth.  He has been denied full enjoyment and benefit of his housing unit because of his disabilities

Gail Carson

53.     Plaintiff Gail Carson first moved into public housing from a nursing home in 2011.  Ms. Carson notified HAPGC at an HAPGC Board of Commissioners meeting that she used a scooter because of multiple sclerosis and required a wheelchair accessible unit.  **Exhibit 11,** Letter from Ms. Carson to HAPGC**.**

54.     Despite this request, Ms. Carson was assigned an inaccessible housing unit by the HAPGC. Ms.  Carson can drive her scooter forward into her bathroom.  She is unable to direct her scooter in any other direction. She can only face the wall opposite of entrance into the bathroom. Additionally, there are no grab bars or other assistive elements in her bathroom to assist her in transferring from her chair.  Because of the lack of accessibility features in her bathroom, Ms. Carson depends on the assistance of a second person to physically lift her up from her chair when they are in the bathroom.  This second person must stand in the bathtub and physically lift Ms. Carson and place her on the toilet.  A similar routine is used for Ms. Carson to access her tub and shower.  **Exhibit 12,** Affidavit of Ms. Carson**.**

55.     On several occasions she requested to have modifications to her bathroom completed so that her unit could be made accessible.  Ms. Carson even has funding available through the Community First Choice program to help pay for modifications.  Because she moved into public housing from a nursing home, she had certain funds at her disposal to increase accessibility in her unit.  In August 2014, HAPGC staff even visited Ms. Carson in her unit after one such request and observed that the unit was inaccessible and in apparent agreement with her, recommended that she be transferred to an existing accessible unit, aware that such a unit did not exist. However, Ms. Carson was only recently offered transfers in late June 2016 to units that lack accessibility features, including a unit which her power scooter could not reach because the route on which it was located was too steep.

56.     Ms. Carson remains in an inaccessible unit.  This is a source of anxiety, despair, physical pain, and discomfort for Ms. Carson. While her doctors have suggested she get an electric wheel-chair, she has been hesitant to get one because of the lack of space in her apartment.  Ms. Carson can only safely utilize the bathroom in her unit when a second person is there to assist her. Further, being lifted by a second person while they stand is a tub causes anxiety about her safety and causes her physical discomfort. *Id.* She has been denied full enjoyment and benefit of his housing unit b/c of his disabilities

**Defendants Have Ignored Plaintiffs' Requests for Either an Accessible Unit and Reasonable Modifications to Public Housing Units and Fail to Follow its Own Internal Protocols regarding Reasonable Accommodations**

57.     Defendants have failed to respond to any of the Plaintiffs requests for an accessible unit or for structural modifications to units.

58.     While Defendants maintain a reasonable accommodation policy, this reasonable

accommodation policy has not been applied in the instance of the Plaintiffs.  **Exhibit 1**3,

HAPGC Reasonable Accommodation Policy. Upon information and belief, Defendants' standard

operating procedure is to ignore its own internal policies relating to reasonable accommodation

requests.

59.     For example, Defendants' policy requires that HAPGC log reasonable accommodation

requests and respond within 30 (thirty) days of receipt of a request.  Additionally, a denial of a

request must be made in writing, but if HAPGC requires additional information it is incumbent

upon HAPGC to request that information from the requesting party.

60.     Defendants Eric Brown and Alvin Coley, HAPGC, its agents, employees, and staff, do

not follow HAPGC protocol and procedures.  There is no appointed 504 coordinator to assist in

HAPGC following applicable law for persons with disabilities.

**Defendants Have Imposed Additional Terms and Conditions on Plaintiffs because of their**

**Disabilities Through a Sponsorship Form**

61.     In addition to the suffering from the lack of accessibility in their housing and the

Defendants unwillingness to provide any accessibility features, Plaintiffs Ripley, Phillips,

Carson, and Galloway, have also experienced unlawful disability discrimination and humiliation

from HAPGC imposing additional terms and conditions on their residency in the form of a

'sponsorship form.'

62.     The 'sponsorship form' is an agreement between HAPGC and a third party wherein the

third party warrants to HAPGC:

> "[S]hould the leasee be unable to continue to maintain her/himself because of
> serious or chronic physical or mental health problems I agree to remove the leasee
> from the above premises and the make the individual my sole responsibility, and

will not request further assistance from the Department until the leasee is able to resume full personal maintenance."

As a condition of their occupancy, the Plaintiffs have been required to complete the sponsorship form and identify a 'sponsor' or a third party who would agree to remove the Plaintiffs from their units.

63.     Ms. Ripley first moved into HAPGC public housing in 1988.  Upon moving in and as part of her initial certification to demonstrate her eligibility for public housing assistance, Ms. Ripley was given a packet to complete that required her to provide information such as  her income, social security number, family size, and the "sponsorship form."  Ms. Ripley was told to complete and return all the forms in the packet.

64.     Each subsequent year, Ms. Ripley is given a new packet of information to complete as part of her recertification.  This includes items like her annual income, savings, and also a 'sponsorship form.'   Each year Ms. Ripley has had a friend or someone she knows complete the sponsorship form.  Ms. Ripley most recently completed a 'sponsorship form' in 2014.

65.     Ms. Gail Carson first applied to HAPGC public housing in 2009 while she was still residing in a nursing facility. When Ms. Carson first applied for public housing she requested a wheelchair accessible unit for herself.

66.     Beginning at Ms. Carson's initial certification for public housing and for all subsequent annual recertifications, a 'sponsorship form' has been completed on behalf of Ms. Carson with her mother, Jeanette Carson identified as the 'sponsor.'  This form had been completed without the knowledge or consent of Ms. Gail Carson.

67.     Mr. Kenneth Galloway first applied to public housing in 2002 and requested a wheel-chair accessible unit for himself as a family of one.  Mr. Galloway was given a packet of paper-

work and told that it must be completed before he could move into public housing.  Among the forms included in this paper work was a 'sponsorship form.' Mr. Galloway had his brother, David Galloway, complete the form on his behalf.

68.     Mr. Andre Phillips first moved into public housing in 2010 with his then-wife.  At the time Mr. Phillips moved into public housing he was ambulatory.  Upon his initial move-in, Mr. Phillips was not required to complete a 'sponsorship form.'  Later that year in 2010, Mr. Phillips became paralyzed from the waist down.

69.     On or about August 2013, Mr. Phillips separated from his wife. In 2013, Mr. Phillips' annual recertification to public housing included a 'sponsorship form' completed by his daughter Ms. Erika Phillips.  Mr. Phillips' has never been provided a copy of this form as part of his annual recertification. He was not aware that his own daughter had been asked to complete this form and to control his tenancy in this manner.

70.     This form is an illegal condition of tenancy and is a source of inconvenience, embarrassment and humiliation for the Plaintiffs.

## COUNT I

### VIOLATIONS OF § 504 REHABILIATION ACT OF 1974, 24 U.S.C. § 794

71.     All paragraphs of this complaint are hereby incorporated by reference.

72.     The Defendants discriminated against the Plaintiffs within the meaning of Section 504 of the Rehabilitation Act, 24 U.S.C. § 794 and its implementing regulations for HUD subsidized properties, 24 C.F.R. Part 8, by failing to provide a public housing program that is readily accessible and usable by the Plaintiffs because of the inaccessibility of HAPGC's public housing units. 24 C.F.R. § 8.25. Defendants Eric Brown and Alvin Coley have the obligation to provide

accessible units and were aware that the HAPGC public housing stock did not have accessible units and were aware of the circumstances of the Plaintiffs.

73.     The Defendants discriminated against the Plaintiffs within the meaning of Section 504 of the Rehabilitation Act, 24 U.S.C. § 794 and its implementing regulations for HUD subsidized properties, 24 C.F.R. Part 8, by failing to respond to Plaintiffs reasonable accommodation requests to be transferred to wheelchair accessible units or to have modifications to their units.

74.     The Defendants discriminated against Plaintiffs Ripley, Phillips, Galloway, and Carson within the meaning of Section 504 of the Rehabilitation Act, by requiring them to submit to an independent living requirement that imposes different terms and conditions on residents based on their disabilities.

75.     The Defendants discriminated against Plaintiff Ms. Ripley within the meaning of Section 504 of the Rehabilitation Act, 24 U.S.C. § 794 and its implementing regulations for HUD subsidized properties, 24 C.F.R. Part 8, by failing to create install amenities for common use at the property that are accessible for persons with disabilities, specifically a gazebo.

76.     As a proximate result of Defendants unlawful conduct, Plaintiffs have been injured and seek relief as set forth herein and request compensatory damages in the amount of $200,000 each.

## COUNT II

**VIOLATION OF FAIR HOUSING ACT AMENDMENTS OF 1988, 42 U.S.C. 3604 *et seq*.**

76.     All paragraphs of this complaint are hereby incorporated by reference.

77.     The Defendants discriminated against the Plaintiffs within the meaning of the Fair Housing Act Amendments by failing to respond to Plaintiffs reasonable accommodation requests to be transferred to wheelchair accessible units or to otherwise accommodate their disabilities..

42 U.S.C. 3604f(3)(B).  Defendants Eric Brown and Alvin Coley have the obligation to provide accessible units and were aware that the HAPGC public housing stock did not have accessible units and were aware of the circumstances of the Plaintiffs.

78.     The Defendants discriminated against Plaintiffs Ripley, Phillips, Galloway, and Carson within the meaning of the Fair Housing Act Amendments, by requiring them to submit to an independent living requirement that imposes different terms and conditions on residents with disabilities.

79.     As a proximate result of Defendants unlawful conduct, Plaintiffs have been injured and seek relief as set forth herein and request actual damages in the amount of $200,000 each, and punitive damages from Defendants Brown and Coley in the amount of $15,000 each.

## COUNT III

## VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12132

80.     All paragraphs of this complaint are hereby incorporated by reference.

81.     The Defendants discriminated against the Plaintiffs within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. § 35 Subpart D, by failing to provide a public housing program that is readily accessible and usable by the Plaintiffs because of the inaccessibility of HAPGC public housing.

83.     The Defendants discriminated against the Plaintiffs within the meaning of the Americans with Disabilities Act , 42 U.S.C. § 12132, and its and its implementing regulations, 28 C.F.R. § 35 Subpart D, by failing to respond to Plaintiffs reasonable accommodation requests to be transferred to wheelchair accessible units or to have modifications to their units.

84.     The Defendants discriminated against Plaintiffs Ripley, Phillips, Galloway, and Carson within the meaning of 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. § 35

Subpart D, by requiring them to submit to independent living requirement that imposes different terms and conditions on residents based on their disabilities.

85.     The Defendants discriminated against Plaintiff Ms. Ripley within the meaning of Section of 42 U.S.C. § 12132, and its implementing regulations, 28 C.F.R. § 35 Subpart D, by failing to create install amenities for common use at the property that are accessible for persons with disabilities, specifically a gazebo.

84.     As a proximate result of Defendants unlawful conduct, Plaintiffs have been injured and seek relief as set forth herein and request actual damages in the amount of $200,000 each.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request the court:

1) Exercise jurisdiction over this matter;

2) Adjudge and declare that Defendants have violated Section 504 of the Rehabilitation Act, 29 USC 794; the Fair Housing Act as amended, 42 U.S.C  3604 *et seq*, and Title II of the Americans with Disabilities Act, 42 U.S.C. 12132, and their implementing regulations

3) Enjoin Defendants from further discriminating against Plaintiffs;

4) Compel the Defendants to

   a. Transfer the Plaintiffs to UFAS accessible units;

   b. Make modifications to the Plaintiffs units so that they are UFAS accessible; or

5) Compel Defendants to follow its own administrative procedures and all applicable law;

6) Compel Defendants, their agents, and employees, to submit to regular fair housing trainings under an expert in fair housing;

7) Compel Defendants to schedule fair housing training for all residents of HAPGC public housing;

8) Compel Defendants to appoint a 504 Reasonable Accommodation Coordinator;

9) Compel Defendants to undergo a 504 Needs Assessment and develop a transitional plan;

10) Compel Defendants to install an accessible gazebo at 1100 Owens Rd.

11) Compel Defendants to create a centralized system for tracking reasonable accommodation requests that have been made;

12) Award any available damages to Plaintiffs;

13) Award any and all reasonable attorney's fees;

14) Grant any other relief the Court may deem appropriate.


Respectfully Submitted,

/s/

_____

David A. Prater
Federal Bar Number: 30223
*Attorney for Plaintiffs*
Maryland Disability Law Center
1500 Union Ave.
Suite 2000
Baltimore, MD 21211
davidp@mdlclaw.org
p: 410-727-6352, ext. 2500
f: 410-727-6389


Date:  7/_27_/2016